UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:25-cr-155-MOC |
| | ) | |
| v. | ) | **BILL OF INDICTMENT** |
| | ) | |
| (1) DONALD CALVIN SAUNDERS, | ) | 18 U.S.C. § 371 |
| (2) VANESSA RAGIN-BOATRIGHT, | ) | 18 U.S.C. § 1347 |
| (3) LATARSA HITCHCOCK, | ) | 42 U.S.C. § 1320a-7b(b)(4) |
| (4) DAJUAN STRICKLAND, | ) | 18 U.S.C. § 1956(h) |
| (5) CYNTHIA JENKINS HARRIS, | ) | 18 U.S.C. § 1957 |
| (6) STEPHANIE CORBETT, and | ) | 18 U.S.C. § 2 |
| (7) KAREN MCCLARY | ) | |
| | ) | |

**THE GRAND JURY CHARGES**:

At the specified time and at all relevant times:

## Introduction

1. Beginning no later than on or about June 9, 2017, and continuing until on or about December 6, 2024, within the Western District of North Carolina and elsewhere, DONALD CALVIN SAUNDERS (SAUNDERS), VANESSA RAGIN-BOATRIGHT (BOATRIGHT), LATARSA HITCHCOCK (HITCHCOCK), DAJUAN STRICKLAND (STRICKLAND), CYNTHIA JENKINS HARRIS (JENKINS), KAREN MCCLARY (MCCLARY), STEPHANIE CORBETT (CORBETT), David Cory Hill (Hill), charged elsewhere, and others conspired (1) to defraud the South Carolina Medicaid Program (SC Medicaid) by directing and causing companies in the Western District of North Carolina and elsewhere to submit false and fraudulent reimbursement claims to SC Medicaid for behavioral health services that were not performed and (2) to pay and receive illegal kickbacks for the referral of eligible Medicaid beneficiaries and bribes for the unauthorized transfer of Medicaid beneficiary names and identification numbers. As part of the conspiracy, the conspirators used and caused the unauthorized use of personal identifying information (PII) of SC Medicaid beneficiaries.

2. The conspirators and the companies they created to submit fraudulent claims to SC Medicaid (hereinafter "billing providers") were collectively paid over $21 million dollars for false and fraudulent claims for behavioral health care services not rendered and that were tainted by illegal kickbacks and bribes. Two or more of the coconspirators engaged and attempted to engage in financial transactions designed in whole or in part to conceal and disguise the source, ownership, and control of the proceeds of their health care fraud offenses. The conspirators also knowingly engaged, attempted to engage, and caused others to engage in monetary transactions exceeding $10,000 using the proceeds of healthcare fraud.

## Relevant Individuals and Entities

3. SAUNDERS—a resident of Charlotte, North Carolina—was an organizer and leader of the conspiracy to defraud SC Medicaid and to pay and receive illegal kickbacks and bribes for Medicaid beneficiary names and identification numbers. SAUNDERS advised and assisted HITCHCOCK, STRICKLAND, Hill, and others on how to create and operate Medicaid billing provider companies. In exchange, SAUNDERS received a portion of the illegal proceeds generated by such companies. SAUNDERS operated from offices in Charlotte, North Carolina and elsewhere.

4. BOATRIGHT—an Assistant Professor of Social Work and resident of Manning, South Carolina—was SAUNDERS's office manager. In exchange for a salary and other compensation, BOATRIGHT coordinated with billing provider owners, facilitated the purchase of Medicaid beneficiary names, recruited licensed therapists for the use of their National Provider Identification (NPI) numbers and other credentials, and created and caused to be created fictitious counseling notes and other documents purportedly detailing services rendered, to be maintained in the event of an audit.

5. HITCHCOCK—a resident of Jacksonville, Huntersville, Harrisburg, and Raleigh, North Carolina—incorporated Helping Hands Behavior Healthcare Services LLC (Helping Hands) in South Carolina. Helping Hands was enrolled as a behavioral health care services provider with the South Carolina Department of Health Human Services (SCDHHS). HITCHCOCK and others managed Helping Hands from SAUNDERS's offices in Charlotte, North Carolina. After SCDHHS terminated Helping Hands' Medicaid enrollment, HITCHCOCK continued the Medicaid fraud and kickback conspiracy through beneficial ownership and operation of Next Step Behavioral Health LLC (Next Step) and Banks Resources, LLC (Banks Resources).

6. STRICKLAND—a resident of Charlotte, North Carolina, and Buffalo, New York—and SAUNDERS organized and caused to be organized Strickland Cares, LLC (Strickland Cares), DS Transpo, and DDS Transportation, LLC (DDS Transportation) in North Carolina and CStrick Services (CStrick) in South Carolina in the names of STRICKLAND's relatives. Strickland Cares, DS Transpo, DDS Transportation, and CStrick were enrolled as behavioral health care services providers with SCDHHS. STRICKLAND also assisted in the organization of Banks Resources and Medna Cares LLC (Medna) in the names of conspirators and nominees. Strickland Cares, DS Transpo, DDS Transportation, CStrick, Banks Resources, and Medna were managed from SAUNDERS's residence in Charlotte, North Carolina, SAUNDERS's and Hill's offices in Charlotte, North Carolina, and elsewhere.

7. Hill, charged elsewhere, was a resident of Charlotte and Concord, North Carolina. Hill incorporated David Hill Consultants, LLC (DHC) in North Carolina. DHC was enrolled as a behavioral health care services provider with SCDHHS. Hill also submitted false and fraudulent claims for other behavioral health companies, including Medna. Hill shared offices with SAUNDERS in Charlotte, North Carolina.

2

8. JENKINS—a former employee of the State of South Carolina and a resident of Elgin, South Carolina—owned New Beginning Consulting Firm LLC. JENKINS facilitated fraudulent Medicaid billing by supplying the NPI numbers of licensed behavioral health professionals to the coconspirators. JENKINS also created and caused the creation of fictitious clinical service notes, which she provided to her coconspirators.

9. MCCLARY—a resident of Kingstree, South Carolina—was employed as a case manager for a Medicaid provider in South Carolina with access to Medicaid beneficiary PII. MCCLARY sold Medicaid beneficiary PII to SAUNDERS, HITCHCOCK, STRICKLAND, Hill, and others.

10. CORBETT—a resident of Georgia—was an experienced medical coder and biller who owned Cormed Medical Billing Inc. CORBETT was paid for each successful Medicaid claim she submitted on behalf of SAUNDERS, BOATRIGHT, HITCHCOCK, and others. CORBETT helped MCCLARY facilitate the sale of beneficiary names and identification numbers by verifying their Medicaid eligibility.

## The South Carolina Medicaid Program

11. SC Medicaid was a state-administered program aided by federal funds. SC Medicaid operated, in relevant part, as follows:

   a. SC Medicaid was a health care program that helped pay for reasonable and medically necessary services for qualifying, enrolled individuals and their families, referred to herein as "beneficiaries." Covered services included behavioral health care. The SC Medicaid program was administered by SCDHHS.

   b. Qualified individuals could enroll as SC Medicaid beneficiaries. At the time of enrollment, beneficiaries received unique alphanumeric codes issued by the program, known as Medicaid identification numbers. Beneficiaries used their Medicaid identification numbers to receive covered services.

   c. SC Medicaid beneficiaries received behavioral services from licensed practitioners (referred to herein as "rendering providers") and companies who employed licensed practitioners (referred to herein as "billing providers"). Rendering providers and billing providers were required to obtain a federal identification number, known as an "NPI" number. Rendering and billing providers certified that they would only bill SC Medicaid for medically necessary services they actually performed. Eligible beneficiaries could receive behavioral health services from a variety of qualified Medicaid providers located within the South Carolina Medical Service Area, which was defined as the State of South Carolina and areas in North Carolina and Georgia within 25 miles of the South Carolina border.

   d. Enrolled billing providers in good standing could submit claims to SCDHHS for reimbursement through an electronic portal without documentation of the service provided. Such claims included, among other information, the rendering

3

provider's NPI number, the beneficiary's Medicaid number, date(s) of services, and applicable medical procedures and diagnosis codes.

    e. Billing providers were also required to maintain clinical records for each SC Medicaid beneficiary that fully described the extent of the services they were provided. A beneficiary's clinical record included, among other documents, diagnostic assessments establishing medical necessity, individual plans of care and clinical service notes. Clinical records were signed by a qualified rendering provider and included sufficient details to justify SC Medicaid reimbursement according to the services stated in the claim.

    f. SC Medicaid would initiate site visits and audits to ensure that claims presented by a provider met the requirements of federal and state laws and regulations. Providers whose claims did not meet SC Medicaid requirements could be subject to recoupment for amounts paid on deficient past claims and could be placed on prepayment review for future claims. Providers on prepayment review were required to submit documentation supporting their claims before they could be reimbursed for their services.

  12. SC Medicaid was a "health care benefit program," as defined in Title 18, United States Code, Section 24(b).

### The Conspiracy to Commit Medicaid Fraud and Pay and Receive Illegal Kickbacks

  13. SAUNDERS and his coconspirators carried out the conspiracy to commit Medicaid fraud and pay and receive illegal kickbacks through the following manner and means, among others:

    a. **The conspirators would organize and enroll behavioral health care provider companies with SC Medicaid.** Persons who are not themselves licensed medical health practitioners may own or control businesses that employ such professionals. Such billing providers are authorized to submit claims to SCDHHS after they complete the enrollment process. SAUNDERS, BOATRIGHT, Hill, and others provided advice, assistance, and directions to coconspirators regarding how to establish and successfully enroll Medicaid billing provider businesses. The conspirators paid SAUNDERS a percentage-based kickback from SC Medicaid SCDHHS remittances to the billing providers that he helped create.

    b. **The conspirators would obtain the names and NPIs of licensed behavioral health providers in whose names fraudulent claims were submitted.** Some of these "rendering providers" were paid for the use of their NPIs. Most were unwitting participants who did not know that their names and NPIs were associated with fraudulent Medicaid claims. Some gave their NPIs and professional credentials to SAUNDERS, BOATRIGHT, STRICKLAND, JENKINS, Hill, and others as part of an application for a job that never materialized. Others were hired to perform clinical note review or supervision of other therapists. Most confirmed that they did not see the

4

patients or perform the services as represented on the claims submitted by conspirators to SC Medicaid using their credentials.

   c. **The conspirators would obtain eligible Medicaid beneficiary PII.** Except for approximately 36 fictitious beneficiary identities sold in the investigation, the beneficiaries in whose names claims were filed were real people enrolled with SC Medicaid. Medicaid beneficiary PII was acquired through various means. BOATRIGHT and others paid kickbacks to persons with access to Medicaid beneficiary information to provide lists of their clients and PII. MCCLARY, who was formerly BOATRIGHT's student, worked for a case management company where she had access to Medicaid beneficiary PII that she sold to the conspirators for approximately $200 to $300 per eligible beneficiary. The beneficiaries whose names and PII were purchased and sold did not know that Medicaid claims had been submitted in their name and did not receive the services as represented to SC Medicaid.

   d. **The conspirators would submit fraudulent claims to SC Medicaid through electronic portals.** The conspirators submitted or caused to be submitted materially false and fraudulent claims in the names of the billing provider companies in the conspiracy for services that were not performed. Such false and fraudulent billing for services not rendered included billing for the maximum dates of service for which a beneficiary was eligible; "back billing" for services purportedly provided before a beneficiary was determined eligible, identified by the conspirators, or for earlier dates of service when no services were rendered on those earlier dates; billing for nearly or more than 24 hours of service in a day for one provider; and billing for services rendered to disabled, deceased, and fictitious beneficiaries.

## The Money Laundering Conspiracy

 14. SAUNDERS and his co-conspirators agreed to conduct and attempt to conduct financial transactions that involved the proceeds of a specified unlawful activity, to wit: the Medicaid fraud and kickback conspiracy described above, with the intent to conceal and disguise the nature and source of the proceeds of the Medicaid fraud and kickback conspiracy. The conspirators would also conduct and cause others to conduct monetary transactions in excess of $10,000, knowing that the source of the transactions included the proceeds of their Medicaid fraud and kickback conspiracy.

 15. The manner and means used to accomplish the money laundering conspiracy included, among others, the following:

   a. SAUNDERS, STRICKLAND, Hill, and others would create billing provider companies or acquire billing provider companies in the name of nominees. Such billing providers would be designated to receive SC Medicaid remittances. Payments due to the various conspirators for their role in the conspiracy would then be distributed from the billing providers' bank accounts in whole or in part to conceal the nature and source of the proceeds of the Medicaid fraud and kickback conspiracy.

5

b. STRICKLAND, Hill, and others, through the billing provider companies under their control, would receive payments from SC Medicaid, which funds were the proceeds of the Medicaid fraud and kickback conspiracy deposited into bank accounts under their control, including Bank of America bank accounts in Charlotte, North Carolina and elsewhere. STRICKLAND's and others' companies would be enrolled with SC Medicaid in the name of nominees to conceal their involvement and beneficial ownership. STRICKLAND, Hill, and others would then distribute the proceeds of the Medicaid fraud and kickback conspiracy from bank accounts in Charlotte, North Carolina, and elsewhere to their coconspirators for their roles in furtherance of the Medicaid fraud and kickback conspiracy.

c. STRICKLAND, Hill, and others would pay kickbacks to SAUNDERS and others from the proceeds of their fraudulent Medicaid remittances received in the billing providers' bank accounts. SAUNDERS would not associate his name with the billing provider companies to conceal his involvement with them. Kickback agreements and payments would be disguised as consulting contracts, payroll, and other purposes to conceal the nature and source of the payments.

d. BOATRIGHT, JENKINS, and others would receive payments from SAUNDERS, STRICKLAND, Hill, and others, through the billing provider companies under their control, for their roles in the Medicaid fraud and kickback conspiracy. Such deposits were derived in whole or in part from the proceeds of the Medicaid fraud and kickback conspiracy, including funds electronically transferred from DHC's bank account in Charlotte, North Carolina. BOATRIGHT further transferred proceeds of the conspiracy to HITCHCOCK, STRICKLAND, CORBETT, and others to carry on the Medicaid fraud and kickback conspiracy.

e. SAUNDERS, BOATRIGHT, STRICKLAND, Hill, and others would conduct and cause others to conduct financial transactions in excess of $10,000, knowing that the source of the transactions included the proceeds of Medicaid fraud and kickback conspiracy.

## COUNT ONE
## 18 U.S.C. § 371
### Conspiracy to Defraud the United States

16. Paragraphs 1 through 15 of the Bill of Indictment are realleged and incorporated by reference.

17. Beginning no later than June 9, 2017, and continuing until on or about December 6, 2024, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendants,

6

(1) DONALD CALVIN SAUNDERS,
(2) VANESSA RAGIN-BOATRIGHT,
(3) LATARSA HITCHCOCK,
(4) DAJUAN STRICKLAND,
(5) CYNTHIA JENKINS HARRIS,
(6) STEPHANIE CORBETT, and
(7) KAREN MCCLARY

did knowingly combine, conspire, confederate, and agree with each other, Hill, and persons known and unknown to the grand jury, to defraud the United States and to commit offenses against the United States.

### Objects of the Conspiracy

18. The objects of the conspiracy included the following offenses against the United States:

a. Knowingly and willfully executing and attempting to execute a scheme and artifice to defraud SC Medicaid and to obtain the money or property owned by, or under the custody or control of, SC Medicaid, by means of materially false or fraudulent pretenses, representations, and promises in connection with the delivery of and payment for health care benefits, items, and services in violation of Title 18, United States Code, Section 1347;

b. Knowingly and willfully making materially false, fictitious, and fraudulent statements and representations and making and using materially false writings and documents in connection with the delivery of and payment for health care benefits, items, or services involving a health care benefit plan in violation of Title 18, United States Code, Section 1035(a);

c. Knowingly and willfully soliciting, receiving, and paying remuneration (including any kickback, bribe, and rebate) directly and indirectly, overtly and covertly, in cash and in kind, for the furnishing and arranging for the furnishing of an item and service that could be paid for, in whole and in part, by a Federal health care program, including SC Medicaid, in violation of Title 42, United States Code, Section 1320(a)-7(b)(b)(1)(A) and (2)(A); and

d. Knowingly and willfully purchasing, selling, and distributing Medicaid beneficiary identification numbers without lawful authority in violation of Title 42, United States Code, Section 1320(a)-7(b)(b)(4).

### Manner and Means

19. SAUNDERS and his coconspirators carried out the conspiracy through the manner and means described in the Introduction to this Bill of Indictment, among others.

7

Case 3:25-cr-00155-MOC-DCK   Document 1   Filed 06/18/25   Page 7 of 18

## Overt Acts

20. In furtherance of the conspiracy and to effect the objects thereof, there was committed by at least one of the conspirators, in the Western District of North Carolina and elsewhere, at least one of the following overt acts, among others:

    a. In and around the dates set forth below, the conspirators identified in the chart below and person(s) known and unknown to the grand jury caused the billing providers set forth below to be incorporated and enrolled as SC Medicaid providers and controlled and operated them in the Medicaid fraud and kickback conspiracy from offices in Charlotte, North Carolina, and elsewhere:

| Billing Provider | Conspirator(s) | Enrollment Date | Approximate Operation Date |
|---|---|---|---|
| Helping Hands | SAUNDERS HITCHCOCK | December 7, 2017 | January 2018 to March 2020 |
| Next Step | BOATRIGHT HITCHCOCK | September 3, 2019[1] | May 2019 to December 2021 |
| DHC | SAUNDERS BOATRIGHT Hill | February 20, 2020 | February 2020 to September 2022 |
| DS Transpo | SAUNDERS STRICKLAND | November 8, 2018 | March 2019 to June 2020 |
| Strickland Cares | SAUNDERS STRICKLAND | February 6, 2019 | July 2019 to July 2020 |
| DDS Transportation | SAUNDERS STRICKLAND | May 27, 2020 | May 2020 to August 2020 |
| CStrick Services | SAUNDERS STRICKLAND | June 17, 2020 | September 2020 to February 2021 |
| Banks Resources | SAUNDERS BOATRIGHT STRICKLAND | November 8, 2018 | July 2019 to September 2022 |
| Medna | SAUNDERS STRICKLAND | February 6, 2019 | March 2022 to September 2022 |

    b. In and around the dates set forth below, SAUNDERS, BOATRIGHT, JENKINS, and others obtained the credentials and NPIs of licensed practitioners as set forth below, among others:

---

[1] In and around September 2019, BOATRIGHT, HITCHCOCK, and a person known to the grand jury acquired Next Step from its previous owner. On or about September 3, 2019, Next Step's SC Medicaid enrollment was changed to reflect the nominee owner as the manager of the company.

8

i. In and around July 2019, the exact date unknown to the grand jury, BOATRIGHT obtained the credentials and NPI of S.F., a licensed practitioner, which the conspirators used to submit materially false claims on behalf of DS Transpo and Strickland Cares stating that S.F. had provided the services as represented.

ii. In and around February 2020, the exact date unknown to the grand jury, JENKINS obtained the credentials and NPI of A.E., a licensed practitioner, which the conspirators used to submit materially false claims on behalf of Banks Resources and Next Step stating that A.E. had provided the services as represented.

iii. By no later than May 2020, the exact date unknown to the grand jury, JENKINS obtained the credentials and NPI of M.A., a licensed practitioner, which the conspirators used to submit materially false claims on behalf of DHC stating that M.A. had provided the services as represented.

iv. In and around June 2020, the exact date unknown to the grand jury, SAUNDERS and BOATRIGHT obtained the credentials and NPI of S.C., a licensed practitioner, which the conspirators used to submit materially false claims on behalf of Strickland Cares and DDS Transportation stating that S.C. had provided the services as represented.

v. In and around September 2020, the exact date unknown to the grand jury, BOATRIGHT obtained the credentials and NPI of M.W., a licensed practitioner, which the conspirators used to submit materially false claims on behalf of CStrick stating that M.W. had provided the services as represented.

vi. In and around February 2021, the exact date unknown to the grand jury, JENKINS obtained the credentials and NPI of M.B., a licensed practitioner, which the conspirators used to submit materially false claims on behalf of DHC stating that M.B. had provided the services as represented.

vii. In and around March 2021, the exact date unknown to the grand jury, JENKINS obtained the credentials and NPI of T.M., a licensed practitioner, which the conspirators used to submit materially false claims on behalf of DHC stating that T.M. had provided the services as represented.

viii. By no later than October 2021, the exact date unknown to the grand jury, JENKINS obtained the credentials and NPI of O.B., a licensed practitioner, which the conspirators used to submit materially false claims on behalf of DHC stating that O.B. had provided the services as represented.

ix. Beginning in and around April 2022 and continuing until in and around September 2022, Hill obtained the credentials and NPI of R.S., a licensed practitioner, which the conspirators used to submit materially false claims on behalf of Medna stating that R.S. had provided the services as represented.

c.   In and around the dates set forth below, SAUNDERS, BOATRIGHT, MCCLARY, Hill, and others obtained Medicaid beneficiary PII as set forth below, among others, without lawful authority, which they used to submit claims for services that the beneficiaries did not receive:

i.   On one or more dates before February 12, 2021, and no later than on or about May 6, 2022, the exact dates being unknown to the grand jury, SAUNDERS, BOATRIGHT, MCCLARY, and Hill transferred and caused the transfer of the name and PII of Medicaid Beneficiary A.C. without his/her authority. SAUNDERS, BOATRIGHT, Hill, and others used A.C.'s PII to submit claims to SC Medicaid for behavioral health services purportedly provided to A.C. by DHC. In truth and in fact, A.C. was a minor who was incapable of receiving, and did not in fact receive, the services listed on DHC's Medicaid claims.

ii.   On one or more dates before July 15, 2022, and no later than on or about around September 23, 2022, the exact dates being unknown to the grand jury, SAUNDERS, STRICKLAND, CORBETT, MCCLARY, and Hill transferred and caused the transfer of the name and PII of Medicaid Beneficiary A.C. without his/her authority. SAUNDERS, STRICKLAND, CORBETT, Hill, and others used A.C.'s PII to submit claims to SC Medicaid for behavioral health services purportedly provided to A.C. by Medna. In truth and in fact, A.C. did not receive the services listed on Medna's Medicaid claims.

iii.   On one or more dates before April 9, 2021, and no later than on or about August 26, 2022, the exact dates being unknown to the grand jury, SAUNDERS, BOATRIGHT, Hill, and others transferred and caused the transfer of the name and PII of Medicaid Beneficiary R.L. without his/her authority. SAUNDERS, BOATRIGHT, Hill, and others used R.L.'s PII to submit claims to SC Medicaid for behavioral health services purportedly provided to R.L. by DHC. In truth and in fact, R.L. did not receive the services listed on DHC's claims.

iv.   On one or more dates before April 15, 2022, and no later than on or about April 22, 2022, the exact dates being unknown to the grand jury, BOATRIGHT, STRICKLAND, CORBETT, and MCCLARY transferred and caused the transfer of the name and PII of Medicaid Beneficiary H.B. without his/her authority. BOATRIGHT, STRICKLAND, and CORBETT used H.B.'s name and PII to submit claims to SC Medicaid for behavioral health services purportedly provided to H.B. by Banks Resources. In truth and in fact, H.B. was a child who did not receive the services listed on Banks Resources' claims. Subsequently, SCDHHS notified H.B.'s parents that he/she could not receive medically necessary services because Banks Resources and other billing provider companies' claims had caused H.B. to exceed the maximum number of allowed units of such services.

v. On one or more dates before July 1, 2022, and no later than on or about August 26, 2022, the exact dates being unknown to the grand jury, SAUNDERS, Hill, and others used H.B.'s PII to submit claims to SC Medicaid for behavioral health services purportedly provided to H.B. by DHC. In truth and in fact, H.B. was a child who did not receive the services listed on DHC's claims.

vi. On one or more dates before September 2, 2022, the exact dates being unknown to the grand jury, BOATRIGHT, HITCHCOCK, STRICKLAND, CORBETT, MCCLARY, and Hill transferred and caused the transfer of the name and PII of Medicaid Beneficiary O.P. without his/her authority. BOATRIGHT, HITCHCOCK, STRICKLAND, and CORBETT used O.P.'s PII to submit claims to SC Medicaid for behavioral health services purportedly provided to O.P. by Banks Resources. In truth and in fact, O.P. was a child who did not receive the services listed on Banks Resources' claims.

vii. On one or more dates before June 17, 2022, and no later than on or about September 23, 2022, the exact dates being unknown to the grand jury, SAUNDERS and Hill used O.P.'s PII to submit claims to SC Medicaid for behavioral health services purportedly provided to O.P. by Medna. In truth and in fact, O.P. did not receive the services listed on Medna's claims.

viii. On one or more dates before June 24, 2022 and no later than September 23, 2022, the exact dates being unknown to the grand jury, SAUNDERS and Hill transferred and caused the transfer of the name and PII of Medicaid Beneficiary B.S. without his/her authority. SAUNDERS and Hill used B.S.'s PII to submit claims to SC Medicaid for behavioral health services purportedly provided to B.S. by Medna. In truth and in fact, B.S. was an adult who did not receive the services listed on Medna's claims. B.S. had been visited at his home by two ladies who left gifts bags of candies, personal items and a DHC's business card.

d. In and around the dates set forth below, SAUNDERS, BOATRIGHT, HITCHCOCK, STRICKLAND, CORBETT, Hill, and others caused the billing providers to submit claims to SC Medicaid using Medicaid beneficiary PII acquired from MCCLARY:

i. From in and around May 2019 and continuing until in and around June 2020, SAUNDERS, BOATRIGHT, STRICKLAND, CORBETT, and others caused DS Transpo to submit more than 5,900 claims to SC Medicaid using Medicaid beneficiary PII for approximately 59 beneficiaries acquired from MCCLARY.

ii. From in and around July 2019 and continuing until in and around July 2020, SAUNDERS, BOATRIGHT, STRICKLAND, CORBETT, and others caused Strickland Cares to submit more than 5,000 claims to SC Medicaid using Medicaid beneficiary PII for approximately 48 beneficiaries acquired from MCCLARY.

11

iii. In and around January 2021, BOATRIGHT, HITCHCOCK, CORBETT, and others caused Next Step to submit more than 30 claims to SC Medicaid using Medicaid beneficiary PII for approximately 2 beneficiaries acquired from MCCLARY.

iv. From in and around July 2020 and continuing until in and around September 2022, Hill and others caused DHC to submit more than 1,600 claims to SC Medicaid using Medicaid beneficiary PII for approximately 18 beneficiaries acquired from MCCLARY.

v. In and around August 2020, SAUNDERS, BOATRIGHT, STRICKLAND, CORBETT, and others caused DDS Transportation to submit more than 140 claims to SC Medicaid using Medicaid beneficiary PII for approximately 74 beneficiaries acquired from MCCLARY.

vi. From in and around September 2020 and continuing until in and around January 2021, BOATRIGHT, STRICKLAND, CORBETT, Hill, and others caused CStrick to submit more than 900 claims to SC Medicaid using Medicaid beneficiary PII for approximately 41 beneficiaries acquired from MCCLARY.

vii. From in and around April 2022 and continuing until in and around September 2022, BOATRIGHT, HITCHCOCK, STRICKLAND, CORBETT, and others caused Banks Resources to submit more than 360 claims to SC Medicaid using Medicaid beneficiary PII for approximately 14 beneficiaries acquired from MCCLARY.

viii. From in and around June 2022 and continuing until in and around September 2022, SAUNDERS, CORBETT, Hill, and others caused Medna to submit more than 170 claims to SC Medicaid using Medicaid beneficiary PII for approximately 6 beneficiaries acquired from MCCLARY.

e. In and around the dates set forth below, SAUNDERS, BOATRIGHT, HITCHCOCK, STRICKLAND, CORBETT, Hill, and others caused SC Medicaid to pay for behavioral health services that were not rendered as claimed, as the conspirators then knew:

i. Between in and around March 2019 and June 2020, SAUNDERS, BOATRIGHT, STRICKLAND, and CORBETT caused SC Medicaid to pay more than $911,000 to DS Transpo for behavioral health services that were not rendered as claimed.

ii. Between in and around July 2019 and July 2020, SAUNDERS, BOATRIGHT, STRICKLAND, and CORBETT caused SC Medicaid to pay more than $858,000 to Strickland Cares for behavioral health services that were not rendered as claimed.

12

iii. Between in and around May 2020 and December 2021, BOATRIGHT, HITCHCOCK, JENKINS, CORBETT, and MCCLARY caused SC Medicaid to pay more than $148,000 to Next Step for behavioral health services that were not rendered as claimed.

iv. Between in and around July 2020 and in and around September 2022, SAUNDERS, BOATRIGHT, JENKINS, MCCLARY, and Hill caused SC Medicaid to pay more than $1.6 million to DHC for behavioral health services that were not rendered as claimed.

v. In and around August 2020, SAUNDERS, BOATRIGHT, STRICKLAND, CORBETT, MCCLARY, and others caused SC Medicaid to pay more than $68,000 to DDS Transportation for behavioral health services that were not rendered as claimed.

vi. Between in and around September 2020 and February 2021, SAUNDERS, BOATRIGHT, STRICKLAND, and Hill caused SC Medicaid to pay more than $224,000 to CStrick for behavioral health services that were not rendered as claimed.

vii. Between in and around April 2022 and September 2022, SAUNDERS, BOATRIGHT, HITCHCOCK, STRICKLAND, and CORBETT caused SC Medicaid to pay more than $174,000 to Banks Resources for behavioral health services that were not rendered as claimed.

viii. Between in and around June 2022 and September 2022, SAUNDERS, STRICKLAND, Hill, and others caused SC Medicaid to pay more than $246,000 to Medna for behavioral health services that were not rendered as claimed.

f. On or about the dates set forth below, the conspirators acquired Medicaid beneficiary PII from MCCLARY:

i. Between in and around January 2021 and April 2021, Hill—who was then in Charlotte, North Carolina—exchanged text messages with MCCLARY to facilitate his purchase, use, and transfer of Medicaid beneficiary PII.

ii. On or about August 11, 2022, STRICKLAND met MCCLARY in Mecklenburg County, North Carolina, and paid her $1,500 in cash for the names and identification numbers of five persons he believed to be SC Medicaid beneficiaries.

iii. On or about August 18, 2022, Hill met MCCLARY in Charlotte, North Carolina, and paid her $3,000 in cash for the names and identification numbers of ten persons he believed to be SC Medicaid beneficiaries. Hill joined SAUNDERS to the meeting with a facetime call from his mobile telephone.

13

      iv.      Between on or about July 2, 2022, and September 15, 2022, SAUNDERS, BOATRIGHT, STRICKLAND, and Hill purchased the Medicaid beneficiary PII of approximately 36 persons who they believed to be Medicaid beneficiaries, but in fact were fictitious identities. Thereafter, STRICKLAND, CORBETT, Hill, and others submitted and caused to be submitted fraudulent claims to SCDHHS using one or more of these fictitious identities.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH SEVEN
## 18 U.S.C. §§ 1347 and 2
### Health Care Fraud

21.     Paragraphs 1 through 15 of the Introduction and Count One of this Bill of Indictment and are realleged and incorporated by reference.

22.     On or about the dates listed below for each of Counts Two through Seven, within Mecklenburg County, in the Western District of North Carolina, and elsewhere, the defendants identified in the chart below for each count, aided and abetted by each other, Hill, and persons known and unknown to the grand jury, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain by means of materially false and fraudulent pretenses, representations and promises, money owned by and under the custody and control of SC Medicaid, in connection with the delivery of, and payment for, healthcare benefits, items and services by submitting and causing to be submitted false and fraudulent claims to SC Medicaid for the payment of behavioral health care services purportedly provided to the SC Medicaid beneficiaries listed below by the billing provider companies listed below:

| Counts | Defendants | Medicaid Beneficiary | Dates False Claims Paid | Billing Provider |
|---|---|---|---|---|
| TWO | SAUNDERS BOATRIGHT | A.C. | 2/12/2021 to 5/6/2022 | DHC |
| THREE | SAUNDERS BOATRIGHT | R.L. | 4/9/2021 to 8/26/2022 | DHC |
| FOUR | SAUNDERS STRICKLAND | B.S. | 6/24/2022 to 9/23/2022 | Medna |
| FIVE | SAUNDERS STRICKLAND | O.P. | 6/24/2022 to 9/23/2022 | Medna |
| SIX | SAUNDERS JENKINS | H.B. | 7/1/2022 to 8/26/2022 | DHC |
| SEVEN | SAUNDERS STRICKLAND | A.C. | 7/15/2022 to 9/23/2022 | Medna |

All in violation of Title 18, United States Code, Sections 1347 and 2.

14

# COUNTS EIGHT THROUGH TEN
## 42 U.S.C. § 1320a–7b(b)(4)
### Unlawful Purchase of Beneficiary Identification Numbers

23. Paragraphs 1 through 15 of the Introduction and Count One of this Bill of Indictment and are realleged and incorporated by reference.

24. On or about the dates set forth below for each of Counts Eight through Ten, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendants,

      (1) DONALD CALVIN SAUNDERS,
      (2) VANESSA RAGIN-BOATRIGHT, and
      (4) DAJUAN STRICKLAND

aided and abetted by Hill and persons known and unknown to the grand jury, without lawful authority, did knowingly and willfully purchase, sell, and distribute, and arrange for the purchase, sale, and distribution of a beneficiary identification number, that is, the payment of cash to MCCLARY in exchange for Medicaid beneficiary PII:

| Count | Defendant(s) | Approximate Date | Amount | Purchase |
|---|---|---|---|---|
| EIGHT | STRICKLAND BOATRIGHT | July 7, 2022 | $1,200 | Medicaid beneficiary PII for eight beneficiaries |
| NINE | STRICKLAND | August 11, 2022 | $1,500 | Medicaid beneficiary PII for five beneficiaries |
| TEN | SAUNDERS | August 18, 2022 | $3,000 | Medicaid beneficiary PII for ten beneficiaries |

All in violation of Title 42, United States Code, Section 1320a–7b(b)(4) and Title 18, United States Code, Section 2.

# COUNT ELEVEN
## 18 U.S.C. § 1956(h)
### Money Laundering Conspiracy

25. Paragraphs 1 through 15 of this Bill of Indictment are realleged and incorporated by reference.

26. Beginning no later than July 6, 2018, and continuing until at least September 30, 2022, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendants,

15

(1) DONALD CALVIN SAUNDERS,
(2) VANESSA RAGIN-BOATRIGHT,
(4) DAJUAN STRICKLAND, and
(5) CYNTHIA JENKINS

did knowingly combine, conspire, confederate, and agree with each other, Hill, and persons known and unknown to the grand jury, to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956 and 1957.

## Objects of the Conspiracy

27. The objects of the conspiracy included the following offenses against the United States:

    a. To knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activities, that is, health care fraud offenses in violation of Title 18, United States Code, Sections 1035 and 1347, and Title 42, United States Code, Sections 1320a-7b(b)(1)(A), (2)(A) and 4, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity, and that while conducting and attempting to conduct such financial transactions knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

    b. To knowingly engage, attempt to engage, and cause others to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, which involved the proceeds of specified unlawful activities, that is, health care fraud offenses in violation of Title 18, United States Code, Sections 1035 and 1347, and Title 42, United States Code, Sections 1320a-7b(b)(1)(A), (2)(A) and 4, and that while conducting and attempting to conduct such monetary transaction knowing that the property involved in the monetary transaction, that is funds fraudulently received from SC Medicaid, represented the proceeds of some form of unlawful activity.

## Manner and Means

28. SAUNDERS, BOATRIGHT, STRICKLAND, JENKINS, Hill, and others known and unknown to the grand jury carried out the conspiracy through the manner and means described in paragraph 15 of the Introduction and Count One of this Bill of Indictment, among others.

All in violation of Title 18, United States Code, Section 1956(h).

16

# COUNTS TWELVE THROUGH FOURTEEN
## 18 U.S.C. §§ 1957 and 2
## Money Laundering

29.     Paragraphs 1 through 15 of this Bill of Information are realleged and incorporated by reference herein.

30.     On or about the dates set forth below for each of Counts Twelve through Fourteen, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendants listed below, aided and abetted by each other, Hill, and persons known and unknown to the grand jury, did knowingly engage, attempt to engage, and cause others to engage in the monetary transactions listed below, by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, which involved the proceeds of specified unlawful activities, that is, health care fraud offenses in violation of Title 18, United States Code, Sections 1035 and 1347, and Title 42, United States Code, Sections 1320a-7b(b)(1)(A), (2)(A) and 4, and that while conducting and attempting to conduct such monetary transaction knowing that the property involved in the monetary transaction, that is funds fraudulently received from SC Medicaid, represented the proceeds of some form of unlawful activity.

| Counts | Defendants | Dates | Transactions |
|---|---|---|---|
| TWELVE | SAUNDERS STRICKLAND | 6/19/2020 | Transfer from a Strickland Cares bank account to a SAUNDERS bank account in the amount of $15,605 |
| THIRTEEN | SAUNDERS STRICKLAND | 6/26/2020 | Transfer from a Strickland Cares bank account to a SAUNDERS bank account in the amount of $10,900 |
| FOURTEEN | SAUNDERS STRICKLAND | 8/11/2020 | Transfer from a DS Transpo bank account to a SAUNDERS bank account in the amount of $20,840 |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## NOTICE OF FORFEITURE

Notice is hereby given of 18 U.S.C. §§ 982 and 28 U.S.C. § 2461(c). Under § 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by § 981(a)(1)(C). The following property so subject to forfeiture in accordance with sections 982 and/or 2461(c):

  a.    All property which constitutes or is derived from proceeds of the violations set forth in Counts One through Ten of this Bill of Indictment;

17

Case 3:25-cr-00155-MOC-DCK    Document 1    Filed 06/18/25    Page 17 of 18

b. All property involved in the violation set forth in Counts Eleven through Fourteen of this Bill of Indictment; and

c. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) and (b) cannot be located upon the exercise of due diligence, has been transferred or sold do, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant to the extent of the value of the property described in (a).

The following property is subject to forfeiture on one or more of the grounds stated above: a forfeiture money judgment for all currency and monetary instruments that were involved in the crimes alleged in this Bill of Indictment.

A TRUE BILL

_____
Grand Jury Foreperson

RUSS FERGUSON
UNITED STATES ATTORNEY

_____
Michael Savage
Graham Billings
Assistant United States Attorneys

18